## ANNIE E. RUFF, Appellant, v. JAMES R. MILNER, Respondent.

### St. Louis Court of Appeals, February 25, 1902.

1. **Pleading:** GENERAL DENIAL: PLEA OF RELEASE IN BANKRUPTCY. The plea of general denial, and the plea of release in bankruptcy, are not inconsistent pleas.

2. **Fraud:** STATUTE OF LIMITATIONS: ACTION. An action predicated upon positive fraud comes within the fifth subdivision of section 4272, Revised Statutes 1899, with respect to the running of the statute of limitations, and the cause of action in such case is to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud.

3. ———: EMBEZZLEMENT: BANKRUPTCY, DEBTS. Debts created by fraud, embezzlement, misappropriation or defalcation, while acting as an officer or in any fiduciary capacity, are not affected by the discharge of the bankrupt.

Appeal from Greene Circuit Court.—*Hon. James T. Neville,* Judge.

REVERSED AND REMANDED.

Ruff v. Milner.

STATEMENT OF THE CASE.

Omitting caption, the first three counts of the petition are as follows:

"Plaintiff for her cause of action says that on the eleventh day of January, 1887, one Isaac Teague executed his promissory note for the sum of $3,000 made payable to the order of this plaintiff, due three years after date and to draw ten per cent per annum from maturity and for value received, and said Teague and his wife, . . . . Teague, secured the payment of said note by executing a deed of trust whereby they conveyed to the defendant as trustee for the benefit of this plaintiff, the following described land, to-wit: The south half of the northeast quarter and. the northeast quarter of the northeast quarter of section 20, and the northwest quarter of section 21, all in township 27 of range 23 in Greene county, Missouri and delivered said note and deed of trust to the plaintiff.

"Plaintiff further says that on the seventeenth day of October, 1890, the defendant having advertised said land for sale, did as trustee sell said land for the sum of $3,358 for the purpose of paying said note, and did receive as such trustee said sum of money; that plaintiff·was entitled to have paid to her by the defendant the sum of $3,230 of the above mentioned $3,258, that the defendant converted the said money to. his own use, although he (the defendant) received the money to and for the use of the plaintiff, and plaintiff has often demanded of defendant the payment of the amount of money received by defendant to plaintiff's use as aforesaid, but defendant has refused and still refuses to pay the plaintiff said sum or any portion thereof, although having promised to pay the same although due and unpaid. Plaintiff further says that she was not aware of and has no knowledge that defendant had collected or received said money until long thereafter, to-wit: a long time after the fourth day of December, 1894.

"Wherefore, plaintiff prays judgment against defendant

for the sum of $3,230 and interest thereon at the rate of six per cent per annum from the seventeenth day of October, 1890, and for costs.

"And for further count in her cause of action the plaintiff says that on the eleventh day of January, 1887, one Isaac Teague executed his promissory note for the sum of $3,000, made payable to the order of this plaintiff, due three years after date and to draw ten per cent per annum from maturity and for value received, and delivered said note to plaintiff; that at the time of the execution and delivery of said note the defendant was the agent of the plaintiff, and thereafter while such agent the defendant did on or about the seventeenth day of October, 1890, collect the sum of $3,000 principal and $230 interest in payment of the principal and interest of said note, and received the same to and for the use of the plaintiff; that plaint'' had no knowledge that defendant had so collected and received said money until long after the fourth day of December, 1894, to-wit: on or about the .... day of December, 1894, at which time the plaintiff first knew that defendant had so collected and received said moneys; that defendant then promised and undertook to pay to the plaintiff said sum, but defendant has failed and refused to pay said sum of money and still fails and refuses to so pay, although often requested to pay the same which remains unpaid. Wherefore plaintiff prays judgment against the defendant for the sum of $3,230 and interest thereon from the seventeenth day of October, 1890, at the rate of six per cent per annum and for costs.

"And plaintiff for another count in her cause of action says that the defendant is indebted to her in the sum of three thousand two hundred and thirty dollars for money had and received for her use and benefit, and which became due and payable on December 4, 1894, and which was demanded of defendant on said day, but which remains unpaid and for which with interest plaintiff asks judgment."

There are other counts for the recovery of an item of

sixty-eight dollars and an item of two hundred dollars, but there is no substantial evidence in support of either of them and they will not be further noticed.

The petition was filed in the circuit clerk's office of Greene county, December 2, 1899. The answer was a general denial, the plea of the five-year statute of limitations and the plea of the defendant's release in bankruptcy alleged to have been made on the .... day of October, 1898. A motion was filed by plaintiff to strike out the answer because the plea of general denial and the plea of release of defendant in bankruptcy was inconsistent, which motion was by the court overruled.

The evidence is that plaintiff was a resident of Philadelphia, Pennsylvania; that she employed the defendant to loan money for her in Greene county; that defendant was her agent from 1884 to 1894 for the purpose of loaning out money, collecting the interest and principal thereof and remitting same to her when collected; that in 1887, defendant as agent of plaintiff made a loan of three thousand dollars to Isaac Teague, took his note therefor payable to the order of plaintiff, which note was secured by a deed of trust on Teague's farm in Greene county. Defendant was named as the trustee in this deed of trust. On October 17, 1900, defendant, without the direction, knowledge or consent of the plaintiff, foreclosed the deed of trust by selling the land for three thousand two hundred and fifty-eight dollars, which was paid to defendant. Defendant never reported the sale to plaintiff or accounted to her for a dollar of its proceeds, but converted and embezzled the whole of it.

Dr. Detweiler, a friend of plaintiff's, visited Springfield in the month of December, 1894, and at the request of plaintiff looked into her business affairs in Greene county, of which Milner, the defendant, had charge as her agent. While investigating the condition of her loans Detweiler discovered that Milner had made a sale under the Teague deed of trust

and had converted the money to his own use. This discovery was made somewhere between the fourth and fifteenth of the month.

Milner in his evidence admitted that he made the sale, got the money and kept it and that he kept these facts concealed from plaintiff. Defendant offered and read in evidence the following petition in voluntary bankruptcy:

"To the Honorable John F. Phillips, Judge, etc.

"The petition of James R. Milner, of the city of Springfield, in the county of Greene and State of Missouri, and district aforesaid, respectively, represents that he has resided continually for thirty years next immediately preceding the filing of this petition at Springfield, Missouri, within said judicial district; that he owes debts exceeding $10,000 and is unable to pay all of the same in full; that he is willing to surrender all of his estate and effects for the benefit of his creditors except the exemptions which are prescribed by State laws now in force in Missouri, and which is exempt by section 6, chapter 3, of the Bankrupt Act herein mentioned, and desires to obtain the benefit of the act entitled 'An act to establish a uniform system of bankruptcy throughout the United States.' Approved July 1, 1898. That schedule hereto annexed marked 'A' and verified by your petitioner's oath contains a full and true statement of all his debts and (so far as it is possible to ascertain) the names and places of his creditors and such further statements concerning said debts as are required by the provisions of said act. Wherefore, your petitioner prays that he may be adjudged by the court to be a bankrupt, within the purview of said act and that he may be decreed to have a certificate of discharge from his debts (in triplicate).

"JAS. R. MILNER, Petitioner.

"Sworn to and proper affidavit and filed August 2, 1898."

Schedule A. "No real estate notes."

Schedule B. "Showing list of creditors. A. E. Ruff, Philadelphia, $3,000."

The above are the schedules filed with the petition on August 2, 1898. He also offered and read in evidence the following certificate of discharge in bankruptcy:

### "*Discharge of Bankrupt.*

"District Court of the United States, Southern Division of the Western District of Missouri.

"Whereas, James R. Milner, of Greene county, in said district, has been duly adjudged a bankrupt, under the acts of Congress relating to bankruptcy, and appears to have conformed to all the requirements of law in that behalf, it is therefore ordered by this court that said James R. Milner be discharged from all debt and claims which are made provable by said acts against his estate, and which existed on the third of August, A. D. 1898, on which day the petition for adjudication was filed herein; excepting such debts as are by law excepted from the operation of a discharge in bankruptcy.

"Witness the Honorable John F. Phillips, judge of said district court, and the seal thereof . . . . day of October, A. D. 1898."

(Seal of the Court)     "SARAH A. LATHAM, Clerk."

The plaintiff offered the following declarations of law, which the court refused to give, to-wit:

"1. The schedule of indebtedness filed in the office of the clerk of the United States court for the Southern division of the Western district of the State of Missouri, at Springfield, Missouri, by the defendant is evidence of an acknowledgment of the indebtedness and takes the debt out of the operation of the statute of limitations.

"2. The court declares the law to be that debt sued on

Vol 92 app—40

in the first count of the plaintiff's petition is not barred by the statute of limitations pleaded by the defendant, and the court further finds that defendant, as trustee in the Teague deed of trust, was a trustee of an express trust and the debt mentioned in said first count is not released by defendant's discharge in bankruptcy."

The court sitting as a jury found the issues for the defendant and plaintiff appealed.

*Charles J. Wright* for appellant.

(1) Motion to strike out defendant's answer should have been sustained. First. Because general denial and confession and avoidance are inconsistent; the debt is admitted. Mr. Bliss in work on Code Pleading, section 340, says: "It is difficult to perceive how one can allege new facts showing a non-liability that do not impliedly admit a liability but for such facts." And again in section 341: "If there was an absolute admission upon the record there could be no accompanying denial." And again in section 342: "The defenses must be consistent. Pleading must tell the truth." Ledbetter v. Ledbetter, 88 Mo. 60; R. S. 1899, sec. 606; Price v. Mining Co., 83 Mo. App. 470, 474. Second. Because the plea of bankruptcy, which is a confession and avoidance, is not a defense in this case. Defendant in his capacity of trustee in the deed of trust, was a trustee of an express trust. Debt not one affected by release in bankruptcy. Bankruptcy Law 1898, sec. 17, chap. 3. (2) Motion to strike out is proper remedy. State ex rel. v. Rogers, 79 Mo. 283. (3) The answer should have stated to which counts the defenses applied. (4) If the motion to strike out is not well taken, then the answer shows on its face that the statute of limitations has not run. (5) Statute of limitations does not obtain: First. Because the entry of the debt in the schedule in the bankruptcy proceedings is sufficient to take the same out of the statute. The

proceedings were voluntary and were sworn to by Mr. Milner. Wood on Lim. of Actions, sec. 92. Second. Because the entry in the schedule is an acknowledgment in writing of an actual subsisting debt, on which the law would imply a promise. Carr v. Hurlburt, 41 Mo. 264, 268.

*Heffernan & Heffernan* for respondent.

(1) Naming of respondent's creditors in his schedule in bankruptcy did not create an implied promise to pay. Carr v. Halburt, Adm'r, 41 Mo. 264; Menefee v. Arnold, 51 Mo. 536; Bridges v. Stephens, 132 Mo. 524, and authorities therein cited. (2) There is no claim that when the plaintiff sent the money to the defendant to loan out, that he secured it with fraudulent intent. But he loaned it out as he agreed to do. But the fraud as alleged is that years afterwards, when money became due, he collected the money, and converted it to his own use. The debtor was released from this obligation by his bankruptcy discharge, and the debt was not such a debt as is excepted from the operation of such discharges by section 14 of the Bankrupt Act of 1898. Chapman v. Forsyth, 2 How. 202; Cronan v. Cotting, 104 Mass. 245; Palmer v. Hussey, 87 N. Y. 303; Woodward v. Towne, 127 Mass. 41; Zeperink v. Gard, 11 Fed. Rep. 295. (3) A discharge in bankruptcy under the Act of 1867, operates to discharge the bankrupt from a debt or obligation which arises from his appropriating to his own use collateral securities deposited with him as security for the payment of money or the performance of a duty, and his failure or refusal to return the same after money has been paid or the duty performed. Hennequin v. Clews, 111 U. S. 565; Upshur v. Briscoe, 138 U. S. 931; In re Basch District Court S. D. N. Y., Nov. 25, 1899. (4) The statute of limitations begins to run as to implied trusts which grow out of the facts and circumstances of each case, as soon as a right exists to declare and enforce them. One seeking to

avoid the bar of the statute of limitations because of the fraud of the defendant must show that he used due diligence to detect it, and if he had the means of discovery in his hands he will be held to have known it. Shelby County v. Bragg, 135 Mo. 291. The above case refers to directors of corporations, clerks of courts, persons holding places of trust, etc. The defendant was simply a loan and collecting agent. Aultman v. Adams, 35 Mo. 503; Donahue v. Bragg, 49 Mo. 273; Beardslee v. Boyd, 37 Mo. 180. (5) The following authorities we think decisive of this case: To recover, the plaintiffs should have brought their suit within ten years after the fraud was committed, "and they would have five years after the discovery," provided they brought the suit within the ten years after the conversion. Hyatt v. Wolf, 22 Mo. App. 191; Hunter v. Hunter, 50 Mo. 445; Brown v. Rogers, 61 Mo. 188; R. S. 1899, sec. 4273. To section 4273 of our statute and a line of decisions that is decisive of the cases of J. P. Bracken and C. M. Bracken against James R. Milner, as also the case of J. P. Bracken against James R. Milner, which, if the following authority had been submitted for your consideration, would without doubt have resulted in a complete defense to both suits, under the statute of limitations. I am pleased to find your opinion in the 22 Appeals which is to the point in this case and in which you use the following language: "To such an action the statute of limitations would not begin to run until discovery 'by the aggrieved party, at any time within ten years after the facts constituting the fraud;' and the party would have five years thereafter in which to bring his action, provided he brought it within ten years. Sec. 3230, Revised Statutes; Hunter v. Hunter, 50 Mo. 445; Brown v. Rogers, 61 Mo. 188." Hyatt v. Wolfe, 22 Mo. App. 197; Foley v. Jones 52 Mo. 64; Wells v. Halpin, 59 Mo. 92; Cale v. McClathry, 9 Mo. 131.

BLAND, P. J.—I.   The plea of general denial and the plea of release in bankruptcy are not inconsistent pleas.   Evidence tending to prove either one of these pleas would not tend to disprove the other and for this reason they are not inconsistent.   Nelson v. Broadhack, 44 Mo. 596; Crowder v. Searcy, 103 Mo. 97; Fisher v. Stevens, 143 Mo. 181; Quigley v. Bambrick, 58 Mo. App. 193; Cox v. Bishop, 55 Mo. App. 135.

II.   The foreclosure was made on October 17, 1900. The knowledge of this fact was not brought home to plaintiff until on or about the fourth or fifteenth day of December, 1894.   The suit was commenced on December 2, 1899, so that less than ten years had elapsed from the commission of the fraud and embezzlement by the conversion of the money, and less than five years from the obtention of the knowledge by plaintiff of the fraud and crime of Milner, before the suit was brought.

The action being predicated upon a positive fraud comes within the fifth subdivision of section 4273, Revised Statutes 1899 (known as the five-year statute), with respect to the running of the statute of limitations.   This subdivision reads, "An action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud."   Hyatt v. Wolfe, 22 Mo. App. 191; Hunter v. Hunter, 50 Mo. 445; Bent v. Priest, 86 Mo. 475.

Milner, in the capacity of trustee in the deed of trust, held the title in trust for plaintiff.   It was this title that he disposed of at the foreclosure sale.   He was the trustee of an express trust and the statute of limitations did not run as he never denied the trust.   Smith v. Ricords, 52 Mo. 581; Ricords v. Watkins, 56 Mo. 553; Shelby Co. v. Bragg, 135 Mo. 291. We conclude, therefore, that the plaintiff's claim is not barred by the statute of limitations.

III. Debts created by fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity are not affected by the discharge of the bankrupt. Sec. 17 of the Bankruptcy Act. Milner, in making the sale and receiving the money bid thereat, acted as the agent of plaintiff and the money came into his hands by virtue of his employment as her agent. This money, according to his own statement and evidence, he spent for his private purposes and concealed the fact from plaintiff. He not only committed a positive fraud as a fiduciary, but was guilty also of embezzlement under our statute defining that offense. Sec. 1912, R. S. 1899. His discharge in bankruptcy did not, therefore, affect the plaintiff's claim because it originated in embezzlment in a fiduciary capacity and in the commission of felony. Strang v. Bradner, 114 U. S. 555; Ames v. Moir, 138 U. S. 306; Bracken v. Milner, 5 Am. Bankruptcy Rep. 23.

We conclude that the learned circuit judge should have given the declarations of law asked by plaintiff and should have found the issues for her. The evidence is clear and in fact is admitted by the defendant that he received the three thousand two hundred and thirty dollars on the sale of the Teague tract of land; that the money belonged to plaintiff and that he converted it to his own use. In this state of the case we reverse the judgment and direct the circuit court to enter judgment for plaintiff for three thousand two hundred and thirty dollars with six per cent interest thereon per annum from October 17, 1900. *Barclay, J.,* concurs; *Goode, J.,* not sitting.